IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYNNE AZARCHI-STEINHAUSER, et al. | : : : : : : : : : : : : : |
| Plaintiffs, | CIVIL ACTION |
| v. | NO. 08-399 |
| PROTECTIVE LIFE INSURANCE COMPANY, et al. | |
| Defendants. | |

MEMORANDUM

June   19  , 2009                                                                           Anita B. Brody, J.

## I. INTRODUCTION

On October 1, 2008, Plaintiffs Lynne Azarchi-Steinhauser and Karen Azarchi ("Plaintiffs") filed a Second Amended Complaint against Defendants Alliance-One Inc. d/b/a/ Computer Services Corporation ("Alliance") and Protective Life Insurance Co. ("PLIC")[1] alleging five counts: 1) Breach of Contract; 2) Bad Faith; 3) Unjust Enrichment; 4) Breach of Good Faith and Fair Dealing; and 5) Agency. On November 12, 2008, Alliance filed a Motion to Dismiss Plaintiffs' Second Amended Complaint (Docket #27). On December 3, 2008, Plaintiffs

---

[1] PLIC, a successor insurance company to Chase Life Insurance and Annuity Company ("Chase"), is responsible for the life insurance policy at issue in this matter. PLIC has not joined in the Motion to Dismiss filed by Alliance.

filed a Cross Motion for Leave to Amend and File a Third Amended Complaint in opposition to Alliance's Motion to Dismiss (Docket #29).

Alliance moves to dismiss Counts I-V of Plaintiffs' Second Amended Complaint. In their Cross Motion for Leave to File a Third Amended Complaint, Plaintiffs withdraw Counts I-IV of the Second Amended Complaint as they pertain to Alliance, conceding that they cannot state a claim under these counts.[2] Plaintiffs, however, continue to assert Count V, labeled "Agency," against Alliance. In addition, Plaintiffs assert for the first time a claim for negligent misrepresentation (Count V of the Proposed Third Amended Complaint) against Alliance and PLIC. In their Reply to the Motion to Amend (Docket #30), Alliance opposes Plaintiffs' continued assertion of the agency claim as well as the inclusion of the negligent misrepresentation claim.

For the reasons stated below, the Court will grant Alliance's Motion to Dismiss and deny Plaintiffs' Motion to File a Third Amended Complaint as to all claims against Alliance.

## II.   BACKGROUND[3]

Plaintiffs are the co-trustees of the Arthur Azarchi Irrevocable Trust ("the Trust"). On or about March 13, 2003, the Trust purchased two life insurance policies—No. FK5231068 ("Policy One") and No. FK3215386 ("Policy Two")—from Chase, insuring the life of Arthur Azarchi ("Mr. Azarchi"). Each policy provided a one million dollar death benefit to the beneficiary,

---

[2] Plaintiffs continue to maintain Counts I-IV with respect to Defendant PLIC. Counts V and VI of the Third Amended Complaint state claims for negligent misrepresentation and agency against both Alliance and PLIC.

[3] Unless otherwise noted, all facts in this section were taken from the Plaintiffs' Second Amended Complaint and were viewed in the light most favorable to the Plaintiffs, the non-moving party.

which was the Trust.  Chase was subsequently purchased by PLIC.  Since the date of purchase, the Trust, as the policy owner, has paid the annual premium amounts of $21,640 and $34,320 on Policy One and Policy Two respectively.

On March 28, 2007, without noticing he had not signed his check, Mr. Azarchi mailed payment in the amount of $55,960 for the premiums due on both policies.  Mr. Azarchi subsequently received notice from Chase and/or Alliance informing him Policy One had entered its "grace" period.  Mr. Azarchi then sent another check for $34,320 to cover the premium for Policy One.  In April 2007, Mr. Azarchi received a letter on PLIC letterhead.  Prior to receiving this letter, Mr. Azarchi had no prior contact with PLIC and was unaware that PLIC was the successor in interest to Chase.  The letter informed Mr. Azarchi that his check of $34,320 had been returned by the bank for reasons stated as "other."  Mr. Azarchi then checked his bank account and saw a debit in the amount of the initial check of $55,960.  Based on this, Mr. Azarchi believed that both premiums had been paid.  As a result of the letter Mr. Azarchi received in April, he "began a long series of phone calls to the Client Services Department at the number listed on the correspondence," which "[u]pon information and belief was and is operated by Alliance, PLIC's agent..." (Pl.'s Cross Mot. for Leave to file Third Amend. Compl., Ex. E. ("Third Amend. Compl.") ¶23).  During these phone conversations, Mr. Azarchi learned that "Chase was no longer his life insurance company as they had recently been bought by PLIC." (Id. at ¶ 25.)  Each of the individuals from Alliance whom Mr. Azarchi spoke with told him that they would look into the situation and get back to him, but his phone calls were never returned. (Id.)

On July 3, 2007, Mr. Azarchi received another letter from PLIC and/or Alliance

indicating that his premium for Policy One ($34,320) would lapse if it was not paid by July 23, 2007.  Mr. Azarchi then contacted PLIC's customer services department, "which, upon information and belief was and is operated by CSC,  PLIC's agent, servant, and/or representative, on numerous occasions, which provided no insight or clarification regarding the return of the checks or any change in the underwriter of these policies."  ¶26  During one of his calls to the customer service department, Mr. Azarchi was placed in contact with a representative identified as Mr. Fritz who requested that Mr. Azarchi send another check in the amount of $34,320.  Mr. Azarchi sent a check in that amount via Federal Express to a lockbox located in Columbus, GA, as instructed by Mr.  Fritz.  On July 20, 2007, PLIC and/or Alliance received this check.  A week later, Mr Azarchi received a third letter from PLIC and/or Alliance requesting a check for $34,320. [4]

On or about July 26, 2007, Mr. Azarchi received written notification that Chase had been acquired by PLIC.  Mr. Azarchi called Mr. Fritz again to inquire about his policies.  Mr. Fritz advised him that "he would look into the matter and contact Mr. Azarchi."    ¶32.  Receiving no word from Mr. Fritz, Mr. Azarchi contacted Mr.  Fritz on August 28, 2007 and was informed that PLIC would renew Policy One but not Policy Two. [5]  Mr. Azarchi continued to make calls to PLIC and/or Alliance regarding his policies but was ultimately informed that PLIC was not

---

[4]  Plaintiffs also state in their proposed Third Amended Complaint that after receiving this letter, Mr. Azarchi called the customer service department.  He spoke with an individual identified as Ms. Walker who requested that he send another check in the amount of $34,320. (Third Amend. Cmpl. ¶ 31.)

[5]  Although omitted from their Second Amended Complaint, Plaintiffs admit in their proposed Third Amended Complaint that Mr. Azarchi first received notification from PLIC that Policy Two had been cancelled on June 2, 2007. (Third Amend. Cmpl. ¶ 27).

reinstating Policy Two.

Plaintiffs allege that "[a]t all material times and without limitation, CSC acted as the agent, servant, and/or representative for and on behalf of Chase and/or PLIC acting within the scope of its employment and authority."[6] ¶56. Furthermore, Plaintiffs claim that "as a direct and proximate result of the wrongful actions by CSC, Plaintiffs have been damaged in an amount equal to the benefits associated with [Policy Two] in the amount of $1,000,000.00." ¶57.

### III.   STANDARD OF REVIEW

####    A.   Motion to Dismiss Standard

Alliance has moved to dismiss Plaintiffs' Second Amended Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in light most favorable to the plaintiff, and determine whether, under a reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). To withstand a motion to dismiss under Rule 12(b)(6), "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 234. This standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Id. However, a court "need not credit a complaint's bald assertions or legal conclusions when

---

[6] Plaintiffs state in their proposed Third Amended Complaint that nearly every time Mr. Azarchi contacted Alliance, he was provided with information that he later learned was inaccurate or insufficient. (Third Amend. Cmpl. ¶ 40.) Plaintiffs also assert that PLIC and/or Alliance made written and verbal misrepresentations to Mr. Azarchi regarding Policy Two and they justifiably relied on those misrepresentations. (Id. ¶ 66.) The only specific allegation raised in the proposed Third Amended Complaint, however, is that Mr. Azarchi relied on Alliance's promises to investigate the matter and to get back to him. (Id. ¶ 41.)

deciding a motion to dismiss." Hunt v. United States Tobacco Co., 538 F.3d 217, 227 (3d Cir. 2008).

### B. Leave to Amend Standard

Plaintiffs are seeking leave to amend and file their proposed Third Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a). Once a responsive pleading has been filed, a party can amend its pleading only by leave of the court or by written consent and leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice and futility." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). "Futility" means that if the complaint were amended, it would fail to state a claim upon which relief can be granted. Id. In determining futility, a district court must apply the same standard as that of Federal Rule of Civil Procedure 12(b)(6). Id. The Supreme Court has cautioned that although "the grant or denial of an opportunity to amend is within the discretion of the [d]istrict [c]ourt, . . . outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of that discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules." Forman v. Davis, 371 U.S. 178, 182 (1962).

## IV. DISCUSSION

### A. Agency

Plaintiffs allege that because Alliance acted as the agent, servant, and/or representative for and on behalf of Chase and/or PLIC and acted within the scope of its employment and authority, it can be held liable for losses arising from the termination of Policy Two under agency law principals. Alliance concedes that it acted as an agent of PLIC. However, Alliance contends

6

that Plaintiffs have not stated a claim under an agency theory of liability because Alliance did not agree to assume liability under the insurance policy and Alliance was an agent to a disclosed principal (Chase and/or PLIC). In Plaintiff's Memorandum of Law in Opposition to Alliance's Motion to Dismiss (Document #29), Plaintiffs cite no law to support their agency claim. Instead, Plaintiffs state only that their agency claim should not be dismissed because the "agency relationship was [not] disclosed by Defendants" and because "at all relevant times, Plaintiffs, and more specifically Mr. Azarchi, were in the dark with respect to the various individuals with whom Mr. Azarchi spoke regarding the status of his insurance policies." (Pl.'s Opp. to Mot. to Dis. 4).

"It is a basic tenet of agency law that an individual acting as an agent for a disclosed principal is not personally liable on a contract between the principal and a third party unless the agent specifically agrees to assume liability."[7] Vernon D. Cox & Co., Inc. v. Giles, 406 A.2d 1107, 1110 (Pa. Super Ct. 1979). Instead, the principal is liable for and bound by any acts that

---

[7] "Because insurance agents work for a disclosed principal (the insurance company they represent), they cannot be individually liable for breach of contract if the insurer wrongfully denies coverage. Likewise, they cannot be liable for breach of the covenant of good faith and fair dealing found in all insurance policies, nor are they liable for ordinary negligence in performing their duties. They can be independently liable if their conduct amounts to a separate tort, such as fraud." Douglas R. Richmond, INSURANCE AND CATASTROPHE IN THE CASE OF KATRINA AND BEYOND, 26 Miss. C. L. Rev. 49, note 170 (2006-2007) (citing Jabour v. Life Ins. Co. of N. Am., 362 F. Supp. 2d 736, 740-41 (S.D. Miss. 2005)). Plaintiffs have not charged Alliance with any separate torts, other than negligent misrepresentation, discussed below. Their only claims relate to the alleged breach of the insurance policy. See also Vandiver Food Stores, Inc. v. Ins. Co. of N. Am., 909 F.Supp. 618, 625-26 (E.D. Ark. 1995) ("[t]he Court is, of course, cognizant that the above stated rule has no application in the case of an independent tort committed by an agent. Here, however, the allegations of [Plaintiff's] Complaint relate solely to an alleged breach of the fire insurance policy issued by [the insurance provider] and the alleged bad faith refusal to pay benefits under that policy.").

the agent performs with actual or implied authority from the principal that are within the scope of the agent's employment. 12 Williston on Contracts § 35:34 (4th ed.). "[D]isclosed or partially disclosed principals are responsible for their agent's acts, even when the principal prohibits the act, if '(I) the act usually accompanies or is incidental to transactions that the agent is authorized to conduct, and (ii) the third person reasonably believes the agent is authorized to do the act.'" Thomas A. Simpson, A COMMENT ON AN INHERENTLY FLAWED CONCEPT: WHY THE RESTATEMENT (THIRD) OF AGENCY SHOULD NOT INCLUDE THE DOCTRINE OF INHERENT AGENCY POWER, 57 Ala. L. Rev. 1163, 1173 (2006) (citing Restatement (Second) of Agency § 161); see also Leather's Best, Inc. v. S. S. Mormaclynx, 451 F.2d 800, 808 (2d Cir. 1971) ("an agent which was acting within the scope of its authority . . . is not liable . . . for the breach of the contract between its disclosed principal and a third party, even when the breach was the result of its own wrongful act.")

     A principal is disclosed if the third party has notice that the agent is acting for a principal and has notice of the principal's identity. Restatement (Second) of Agency § 4(1). If the other party has notice that the agent is acting for a principal but does not know the principal's identity, the principal is a partially disclosed principal. Id. "The other party has notice of the existence or identity of the principal if he knows, has reason to know, or should know of it, or has been given a notification of the fact." Id. at comment a. In addition, a principal is disclosed if the third party has information from which he is able to or should be able to distinguish the principal from others. Marano v. Granata, 24 A.2d 148, 150 (Pa. Super. Ct. 1942) (citation omitted) (finding that the inclusion of the principal's name and address in the contract was sufficient to disclose the principal).

Plaintiffs have not alleged that Alliance agreed to assume liability under the insurance policy or that the principal was undisclosed. Plaintiffs claim that the "agency relationship between Alliance and PLIC" was not disclosed and that Mr. Azarchi was "in the dark" with respect to the various individuals with whom he had contact regarding his insurance policies, but they do not claim that the principal was undisclosed. (Pl.'s Opp. 4). Not only do Plaintiffs fail to allege that the principal was undisclosed, but the allegations contained in both the Second Amended Complaint and the proposed Third Amended Complaint establish that Mr. Azarchi knew the identity and existence of the principal and was aware that Alliance was an agent of Chase and/or PLIC. Mr. Azarchi was aware that Chase was the original principal because he purchased the life insurance policies directly from Chase. (Pl.'s Second Amend. Cmpl. ¶9). In April 2007, before Mr. Azarchi alleges having any contact with Alliance, he received a letter on PLIC's letterhead and "contacted Chase's customer service department, which, upon information and belief was and is operated by CSC, PLIC's agent, servant, and/or representative." (Id. at ¶19, 20). After speaking to Alliance employees, Mr. Azarchi became aware that Chase had been bought by PLIC. Mr. Azarchi knew that he originally entered into an insurance policy with Chase, and he learned from Alliance that PLIC had purchased Chase. Therefore, he knew or should have known that Chase and later PLIC were the principals with whom he contracted. Because Mr. Azarchi knew that Alliance was acting on behalf of a principal insurance company, Alliance cannot be liable under an agency theory.

Mr. Azarchi alleges that he did not know exactly what role each entity played, but he clearly was aware that Chase and later PLIC were the principals with whom he contracted for his

insurance policies. Accordingly, Plaintiffs have not stated a claim for liability under an agency theory. After viewing the allegations contained in the Second Amended Complaint in a light most favorable to Plaintiffs, the Court will grant the Motion to Dismiss Count V of the Second Amended Complaint (agency) against Alliance. Similarly, the Motion to Amend as to the agency claim against Alliance will also be denied as futile.

**B.     Negligent Misrepresentation**

In Count V of their proposed Third Amended Complaint, Plaintiffs allege that Alliance's written and verbal misrepresentations to Mr. Azarchi constitute negligent misrepresentation. The allegations raised in Plaintiffs' proposed Third Amended Complaint, however, fail to state such a cause of action. In Pennsylvania, the elements of a negligent misrepresentation claim are: "(1) a misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation." <u>Gibbs v. Ernst</u>, 647 A.2d 882, 890 (Pa. 1994).

As to the first requirement, Plaintiffs assert that Alliance's employees made various written and verbal statements regarding Mr. Azarchi's insurance policies which were false and were relied upon by Mr. Azarchi. However, the only alleged statements by Alliance's representatives are promises to take future action, such as "they would look into the matter and contact Mr. Azarchi." (Third Amend. Compl. ¶ 30, 35). Under Pennsylvania law, promises to

perform future acts are not misrepresentations unless the promise maker did not intend to fulfill the promise.  <u>Mellon Bank Corp. v. First Union Real Estate Equity and Mortg. Investments</u>, 951 F.2d 1399, 1409, 1410 (3d Cir. 1991).  Plaintiffs do not allege that Alliance's representatives did not intend to investigate the situation and follow up with Mr. Azarchi.

 Furthermore, Plaintiffs have not satisfied the second element of negligent misrepresentation because they do not allege that Alliance employees either knew that their statement was a misrepresentation, made a misrepresentation without knowledge as to its truth or falsity, or made a representation under circumstances in which they ought to have known of its falsity.  Plaintiffs have failed to allege the first two elements of a negligent misrepresentation claim under Pennsylvania law and consequently have failed to state a claim for which relief can be granted.  Accordingly, because Plaintiffs have not stated a claim for negligent misrepresentation, Plaintiffs' Motion to Amend will be denied as futile as to all claims against Alliance.  Because PLIC has not opposed Plaintiffs' Motion to Amend, Plaintiffs are permitted to file a Third Amended Complaint as to all claims against PLIC.  In light of this memorandum, Alliance is terminated as a defendant in this action as no claims remain against Alliance.

               s/Anita B. Brody

               _____

               ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:  Copies **MAILED** on _____ to: